1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEVEN MATTHEW MONGER,

11              Plaintiff,                    No. CIV S-07-1353 GEB DAD P

12        vs.

13   JAMES E. TILTON, et al.,

14              Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16              Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action

17   filed pursuant to 42 U.S.C. § 1983.  On February 8, 2008, defendants Berry and Flores moved to

18   dismiss this action, arguing that plaintiff failed to exhaust available administrative remedies prior

19   to bringing suit and that plaintiff's complaint fails to state a cognizable claim.  Plaintiff has filed

20   an opposition to defendants' motion.  Defendants have filed a reply.

21                                  **BACKGROUND**

22              In his complaint, plaintiff alleges that on November 14, 2004, he sent a letter to

23   the California Department of Corrections Office of Internal Affairs claiming that defendant Berry

24   had made unwanted sexual advances towards him.  Plaintiff alleges that, in retaliation for writing

25   this letter, on November 18, 2004, defendant Berry attempted to incite a group of inmates to

26   inflict violence upon him.  In addition, plaintiff alleges that on the following day, defendant

1

1 Berry called him into his office and told him that he was going to be unassigned from his

2 culinary job.  Plaintiff alleges that, on November 30, 2004, he was in fact unassigned from his

3 culinary job.  Plaintiff claims that he received a chrono from defendant Flores stating that he had

4 been unassigned from his job because of a pending disciplinary infraction authored by defendant

5 Berry.  Plaintiff contends that the information in the chrono was false because at the time it had

6 been generated there were no pending disciplinary infractions pending against him.

7                                  **THE PARTIES' ARGUMENTS**

8 I.  <u>Defendants' Motion</u>

9               Counsel for defendants argues that this action should be dismissed because

10 plaintiff did not exhaust his administrative remedies with respect to his claims against defendants

11 Berry and Flores.  (Defs.' Mot. to Dismiss at 3-7.)  Specifically, counsel argues that plaintiff did

12 not file an administrative appeal regarding any alleged retaliation, so that his claim in this action

13 that the defendants conspired to unassign him from his kitchen job in retaliation for exercising

14 his First Amendment rights is barred.  (<u>Id.</u> at 6-7; Grannis Decl. at 3-4; Cervantes Decl. at 3-4.)

15 Defense counsel argues that to the extent any of plaintiff's administrative appeals relate to a

16 retaliation claim, plaintiff failed to pursue them through the director's level of review or prison

17 officials "screened them out" for lack of documentation.  (<u>Id.</u> at 7; Grannis Decl. at 3-4;

18 Cervantes Decl. at 3-4.)

19               Defendants also argue that plaintiff's complaint fails to state a claim.  (Defs.' Mot.

20 to Dismiss at 3-7.)  Defense counsel has not, however, directly addressed the viability of

21 plaintiff's retaliation claim, which – as plaintiff clarifies in his opposition – is the sole claim

22 presented in this action.[1]

23 /////

24 _____

      [1]  Counsel appears to have inadvertently mistaken a number of plaintiff's factual
25 allegations for separate legal causes of action.  In this regard, counsel unnecessarily challenges
   any potential claim plaintiff may be attempting to present related to sexual harassment or verbal
26 harassment, the right to a particular job while incarcerated, and unsafe working conditions.

II.  Plaintiff's Opposition

    Plaintiff has filed an opposition to defendants' motion to dismiss clarifying that he only seeks redress for retaliation.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 1.)  Specifically, plaintiff argues that "his First Amendment Right to seek redress was violated when he was retaliated against by defendants after filing a sexual harassment complaint with Internal Affairs against C/O Berry."  (Id. at 1-2.)  Plaintiff notes that all other references in his complaint are to facts and do not constitute additional claims for relief.  (Id.)

    Plaintiff argues that he has exhausted his administrative remedies prior to filing suit.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 2.)  In particular, he claims that in Appeal 05-00143, he clearly stated that the defendants issued him a rules violation report and unassigned him from his job in retaliation for his filing of a sexual harassment complaint.  Plaintiff notes that he pursued that appeal through the highest level possible.  He also claims that, in Appeal 05-00081, he clearly alleged that defendants' actions were retaliatory in nature and were taken in response to his filing a sexual harassment complaint against defendant Berry.  Plaintiff notes that prison officials rejected this second appeal for lack of documentation.  However, plaintiff declares that the rejection was erroneous because he attached his CDC-128-B chrono to the appeal.  (Id.)

    Plaintiff asks the court to consider that the events in this case did not occur as a single event, but rather transpired over a period of time.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 2.)  Plaintiff concludes that defendants' motion to dismiss should be denied.

III.  Defendants' Reply

    In reply, counsel for defendants reiterates that plaintiff failed to exhaust his retaliation claim in Appeals 05-00711, 04-03690, and 05-00143.  (Defs.' Reply at 4-5.)  In addition, counsel argues that plaintiff's allegations in Appeal 05-00081 reference only removal from his kitchen job and have nothing to do with alleged retaliation.  (Id. at 2.)  Moreover, defense counsel argues that at the director's level of review plaintiff's Appeal 05-00081 was

"screened out" due to lack of required documentation.  While acknowledging that plaintiff claims that he submitted the appeal with the required documentation, counsel for defendants maintains that none of plaintiff's exhibits support his contention or indicate that he took any steps whatsoever to pursue the appeal after it was "screened out" at the director's level.  Defense counsel relies heavily on the unpublished decision in Smith v. Woodford, No. C 05-3373 SI (pr), 2007 WL 2122648 (N.D. Cal. July 23, 2007).  In that case at the director's level of review an inmate's appeal was screened out for failure to attach a necessary document.  Although the prisoner argued in opposition to a motion to dismiss his complaint in district court that he had resubmitted the appeal with the necessary documentation, and provided a declaration to that effect, the district court granted the defendants' motion to dismiss noting:

> The court credits defendants' evidence over Smith's evidence. Smith's declaration does not have attached to it a copy of any document that would support his assertion, such as a copy of his resubmitted appeal or a mail log showing that he mailed the grievance on the day he says he mailed it.  And he provided no evidence that he made any further inquiry once he allegedly resubmitted the inmate appeal to determine what had become of it.

Counsel for the defendants concludes that, as in Smith, plaintiff in this case failed to properly exhaust his administrative remedies.  (Id. at 2-3.)

**ANALYSIS**

I. Legal Standards Applicable to a Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)

By the Prison Litigation Reform Act of 1995 (PLRA), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

/////

1          The Supreme Court has ruled that exhaustion of prison administrative procedures

2  is mandated regardless of the relief offered through such procedures.  Booth v. Churner, 532 U.S.

3  731, 741 (2001).  The Court has also cautioned against reading futility or other exceptions into

4  the statutory exhaustion requirement.  Id. at 741 n.6.  Because proper exhaustion is necessary, a

5  prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

6  procedurally defective administrative grievance or appeal.  Woodford v. Ngo, 548 U.S. 81, 83

7  (2006).

8          In California, prisoners may appeal "any departmental decision, action, condition,

9  or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code

10  Regs. tit. 15, § 3084.1(a).  Most appeals progress from an informal review through three formal

11  levels of review.  See Cal. Code Regs. tit. 15, § 3084.5.  A decision at the third formal level, also

12  referred to as the director's level, is not appealable and will conclude a prisoner's administrative

13  remedy.  Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2).  A California prisoner is

14  required to submit an inmate appeal at the appropriate level and proceed to the highest level of

15  review available before filing suit.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005);

16  Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

17          As noted above the PLRA exhaustion requirement is not jurisdictional but rather

18  creates an affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion.

19  Jones v. Bock, 549 U.S. 199, ___, 127 S. Ct. 910, 921 (2007) ("[I]nmates are not required to

20  specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d

21  1108, 1117-19 (9th Cir.), cert. denied sub nom. Alameida v. Wyatt, 540 U.S. 810 (2003).  The

22  defendant bears the burden of raising and proving the absence of exhaustion.  Wyatt, 315 F.3d at

23  1119.  "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court

24  may look beyond the pleadings and decide disputed issues of fact."  Id.  "[I]f the district court

25  looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to

26  exhaust–a procedure closely analogous to summary judgment–then the court must assure that

1   [the prisoner] has fair notice of his opportunity to develop a record."[2]  Id. at 1120 n.14.  When

2   the district court concludes that the prisoner has not exhausted administrative remedies, "the

3   proper remedy is dismissal of the claim without prejudice."  Id. at 1120.  See also Lira v. Herrera,

4   427 F.3d 1164, 1170 (9th Cir. 2005), cert. denied ___ U.S. ___, 127 S. Ct. 1212 (2007).  On the

5   other hand, "if a complaint contains both good and bad claims, the court proceeds with the good

6   and leaves the bad."  Jones, 127 S. Ct. at 924.

7   II.  Discussion

8           In this case, the court is not persuaded by defendants' argument that plaintiff

9   failed to exhaust his administrative remedies with respect to his retaliation claim.  Plaintiff

10  pursued three grievances through the director's level of review (Appeals 04-03690, 05-00711,

11  and 05-00081) and a fourth grievance through the second level of review (Appeal 05-00143),

12  which was the highest level of review available for purposes of exhaustion of that grievance.

13  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at Ex. B.) ("The Second Level of Review is considered

14  the department's final action in regard to Rules Violation Reports classified as Administrative.")

15  See also Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (a prisoner's obligation to exhaust

16  administrative remedies persists if some remedy remains available).  All of plaintiff's

17  administrative grievances related to his single claim that defendants engaged in ongoing

18  retaliation against him because he filed a sexual harassment complaint against defendant Berry.

19  Plaintiff presents only that same claim in this action and therefore satisfied the PLRA's

20  exhaustion requirement.

21          For example, in the "Describe Problem" section of Appeal 05-00081, plaintiff

22  wrote:

23          On November the 19th, 2004 I spoke to Correctional Officer Berry
            and was advised that I would be receiving a CDC 115 for failing to
24          perform my assigned duties.  He also stated "I'm going to speak

25  ────────────────────────

26      [2]  Plaintiff was notified of the requirements for opposing a motion to dismiss brought
    pursuant to non-enumerated Rule 12(b) on October 25, 2007.  (Order filed Oct. 25, 2007 at 3-4.)

> with your counselor and have you unassigned from the kitchen."
> Then on November the 30th, 2004 I was in fact unassigned by Lt.
> Flores.  Since Correctional Officer Berry made statements that he
> was going to have me unassigned and shortly thereafter I was,
> [I']m alleging that Correctional Officer Berry conspired with
> correctional Lt. Flores and followed through on his threats.

Plaintiff argued in his administrative appeal that removing him from his job assignment without

adjudication through established disciplinary procedures violated his constitutional rights.  He

further argued that correctional officers acted unlawfully when they "willfully and with deliberate

action" violate disciplinary procedures to exact their own form of retribution on a prisoner.[3]

(Cervantes Decl. Ex. D.)

        Less than two months later, in the "Describe Problem" section of Appeal 05-

00143, plaintiff wrote:

> On December 17, 2004[,] I was issued a CDC 115, Administrative,
> for theft of state food.  First, the time constraints were not met in
> accordance with CCR Title 15, section 3320(a).  The initial RVR
> was not issued until twenty-nine days after the alleged incident.
> Since this writer is a life term prisoner and he has a vested interest
> at his parole hearings the CDC 115 should be time barred.

---

[3] Defendants argue that plaintiff failed to properly pursue Appeal 05-00081 through the director's level of review.  Although defendants have submitted declarations and other documentation demonstrating that the director's level of review "screened out" Appeal 05-00081 for not including form CDC 128-B, plaintiff has refuted their evidence with a declaration, signed under penalty of perjury, stating that he submitted Appeal 05-00081 with the proper documentation.  Moreover, unlike the plaintiff in Smith, plaintiff here has also submitted a copy of Appeal 05-00081, which appears to have the CDC-128-B form attached to it.  As defendants are well aware, section 1997e(a) provides an affirmative defense under which defendants have the ultimate burden to raise and prove plaintiff's failure to exhaust.  In light of plaintiff's evidence, and defendants' failure to persuasively rebut it in their reply, the court finds that plaintiff pursued Appeal 05-00081 through the highest level of review available to him.  See, e.g., Brown v. Castillo, No. 1:02-6018 LKO DLB P, 2008 WL 1773833 (E.D. Cal. Apr. 15, 2008) (defendants failed to carry their burden proving absence of exhaustion when prisoner submitted declaration under penalty of perjury that he submitted a timely appeal regarding his claim).  See also Bradley v. McVay, No. 1:04-6128 AWI DLB P, 2008 WL 495732 (E.D. Cal. Feb. 21, 2008) ("In a situation such as this in which the parties offer differing versions of events based on competing declarations, the [exhaustion] issue is one of witness credibility and the Court cannot make that requisite assessment on a motion to dismiss.").  In any event, as discussed above, plaintiff also pursued other grievances with respect to his retaliation claim through the highest level of review available to him, thus properly exhausting his administrative remedies.

> Especially, when the CDC 115s are used to deny parole. The above cited section states that a prisoner may not lose time if the constraints are not met, but this writer will lose time in the future as a direct rules of this RVR.

Although plaintiff did not expressly raise a retaliation claim in his initial appeal, plaintiff explained to prison authorities during his personal interview that he believed defendant Berry issued the rules violation charge against him as a form of retaliation. In Warden Carey's second level response to plaintiff's appeal, he acknowledged:

> You also stated that you believe this RVR was written as a retaliatory action from previous confrontations with CO Berry. You stated that you believe CO Berry wrote the RVR and had you removed from your job as a culinary worker after you filed an appeal against him for sexual harassment.

(Pl.'s Opp'n to Defs.' Mot. to Dismiss at Ex. A). Thus, contrary to defense counsel's arguments, plaintiff expressly informed prison authorities of his claim that the defendants retaliated against him for filing a sexual harassment complaint.

Plaintiff also specifically described the type of retaliatory actions defendant Berry allegedly engaged in on a number of occasions. For example, in the "Describe Problem" section of Appeal 04-03690, plaintiff wrote:

> On November 18, 2004, I was accused by C/O Berry of stealing lunches out of the Kosher food cart. My position is that I was not stealing and that the whole incident was a misunderstanding, but my innocence will be determined by a disciplinary officer, if in fact a CDC 115 is issued. The foregoing is not the main theme of this grievance, my utilization of this inmate appeals process is to seek redress from the alleged misconduct of a CDC employee. Specifically, Officer Berry.
>
> Immediately after the above incident had occurred officer Berry harassed inmates assigned the the [sic] facility three culinary department, including using searches at the conclusion of the work day to incite and inflame other inmates against this writer. Officer Berry continued his behavior for three days. And when officer Berry would harass these inmates, including this writer, he would make statements like "If you don't like this shit, go see Monger." Officer Berry even went as far as showing inmates my identification card when inmates would ask who inmate Monger was. At one point he even went into the chow hall and yelled at

> numerous inmates (25-30) and told them they would pay for my
> misunderstanding and that if they had a problem with what was
> going to happen to them, then go and see Monger. . . .

Plaintiff argued that defendant Berry's improper actions could have led to violence within the correctional setting.  In addition, as plaintiff pursued his grievance to the highest level of review, he argued that prison officials were engaged in a cover up of the incident.  (Cervantes Decl. Ex. C.)

Finally, plaintiff attempted to expose and appeal the alleged retaliatory motive behind defendants' decision to remove him from his culinary assignment.  In the "Describe Problem" section of Appeal 05-00711, plaintiff wrote:

> On March 1, 2005, I appeared before the Unit Classification
> Committee for consideration of a major adverse program change.
> As of today's date, I still have not received a copy of my California
> Department of Corrections . . . form 128G, describing what actions
> were taken by the committee and the reasons why the actions were
> necessary.  Not providing this inmate with a copy of his CDC
> 128G is a violation of the California Code of Regulations . . . Title
> 15 sections 3375 (g) and (h). . . .

Plaintiff also argued that prison officials' failure to provide him with a copy of CDC 128G prevented him from filing an appeal regarding the Committee's actions.  (Grannis Decl. Ex. C.)

Based on this record, the court finds that plaintiff exhausted his administrative remedies with respect to his claim that defendants retaliated against because he filed a sexual harassment complaint against defendant Berry.  Because prison authorities were put on notice of plaintiff's retaliation claim and acknowledged and attempted to address it, defendants cannot now argue that plaintiff failed to exhaust it.  As noted above, defendants bear the burden of raising and proving the affirmative defense of failure to exhaust administrative remedies.  Jones, 127 S. Ct. at 921; Wyatt, 315 F.3d at 1117-19 & nn.9 & 13.  Defendants Berry and Flores have not carried that burden in this instance and, therefore, their motion to dismiss should be denied.

/////

/////

**CONCLUSION**

In accordance with the above, IT IS HEREBY RECOMMENDED that defendants' February 8, 2008 motion to dismiss (Doc. No. 18) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 15, 2008.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
mong1353.57

10